The Fourth District Appellate Court of the State of Illinois has now convened. The Honorable James A. Kinect presiding. This is our case number 422-0067, Henry K.L. Would counsel for the appellant please state your name for the record and introduce yourself. Your Honor, my name is John Patrick Brown. I am an attorney in Geneseo with Nashville Ford and Brown LLP and I represent the appellant who is the mother in this case. Very good. And for the appellee, you are breaking up at least as I'm able to hear you. Yeah, it's real. I don't know whether to call it static or I don't know what it would be called, it's very broken. Escalera, we know your name, but state your name for the record. My name is Rosario Escalera. I'm from the state of Illinois. Thank you very much. You may proceed. Thank you, Your Honors. And may it please the court. My name is John Patrick Brown. I represent the appellant, the mother in this case. In this case, this is an appeal of a juvenile case from Henry County in which the mother's parental rights were terminated. In this case, Your Honor, the state initially filed a petition for adjudication of wardship. Eventually, after an adjudicatory dispositional hearing, the court found that the parents were not able to care for the child at that time and made the child the ward of the court. Subsequently, after further developments, the child was placed with the father. By all accounts, the father was able to provide well for the child at that time, and eventually the court ordered that the child was returned to the father and found that the father was making appropriate progress and efforts. The court did not make the same finding as to the for the child. The court stated that it would not do that, did not feel comfortable doing that without an order in an F case, which is to say a parentage act case. The father hired an attorney, got service against the mother and obtained an order in a family law case in Henry County, which has subsequently been made part of the record in this case, which gave him, the father, the sole parental decision-making authority and majority parenting time with the mother to receive some occasional supervised parenting time. The father obtained that order by default in Henry County on September 2nd, 2021. On the same day, the state filed its motion to terminate the subsequent hearings. The mother testified that she had been making significant efforts to remedy the issues that the state had identified with her and that she had been trying to communicate with caseworkers. She'd been trying to engage in some contact with the child. In fact, at the final hearing, the mother testified that the child had recently called her within the last the child wanted to tell her that it lost a tooth and some important things. Nevertheless, the court found, and that I should add that the mother's attorney argued that termination was unnecessary and inappropriate, partially because of the parentage act case. Nevertheless, the mother, the court found that the mother's rights should be terminated and therefore terminated the mother's parental rights. Now there are a number of issues that we have identified with this case and I only have a certain amount of time and I don't want to take forever. But I think one of the major issues in this case is the finding that it was in the child's best interests to terminate the mother's parental rights. I think that this is entirely against the manifest weight of the evidence. A large part of this reason is because the court cited a number of factors in statute and eventually said that the child needs permanence. The problem here, your honors, among other things, but I think the main problem here is that this parentage act case exists. The father already has sole parental decision-making authority and effectively sole parenting time. The mother only gets some supervised parenting time. If there are alleged issues with my client's ability to parent the child, and I don't concede that there are, but even on the alleged basis that my client has some issues, there is nothing really that is addressed by terminating the mother's parental rights that is not addressed by the family law court. The trial court was aware of this order in the family law case. In fact, the trial court made specific mention that the same court, the same judge had entered that order. The court in fact told the father that it would not feel comfortable terminating the juvenile case unless the father obtained such an order in the family law case. Counsel, may I interrupt you for a moment? Certainly. Want to just go back to something you said because it didn't sound familiar from my reading of the briefs. In terms of the best interest issue, I thought I heard you just say that you're claiming that the court's finding was against the manifest weight of the evidence. Did you make that argument or is the termination issue based on a constitutionality argument? It was both, your honor. You did argue that it was against the manifest weight of the evidence? Yes, that it was inappropriate to, that that finding was inappropriate. And I think that there, I will say, your honor, I think that those two arguments are very similar. The constitutional issue is, at least the constitutional issue is a, my argument on that is that it is not narrowly tailored to the state's compelling interest because a parent has a fundamental right, fundamental liberty interest to, that a parent has a fundamental right, a fundamental liberty interest in parenting their child and acting as a parent of their child. To terminate that, the state has to apply strict scrutiny. By the way, your honor, I don't mean to, I apologize. My argument as to the state's incorrect finding on the best interest of the child begins on page 13 of my amended brief, my amended initial brief. Let me ask you a question, counsel. Certainly, your honor. Her parental rights remain in limbo because of the open family case. Would that not permit her to at some time in the future, perhaps even in the far distant future, to return to family court and say, I want to expand at visitation? That would, it would, your honor, and that would normally, but, but in terminating her parental rights, the trial court made the point that permanence was a value, and we know that it is, it doesn't apply the same way in every case, and that she had been given what the court described as a lengthy amount of time to get her various issues under control, and that she had not done that. Yes, she'd made some progress, and yes, she had had some contact with the minor, but the court concluded that the child's best interest in permanence and not worrying about her mother's going to show up or going to go back to jail or just kind of drop off the map for a while. Why doesn't that permit the trial court to go ahead and do what it believes is in the child's best interest? Well, your honor, I would say a number of things in response to that. First, the termination of parental rights is effectively forever for my client. She has no ability to change that in the future, whereas the child and the father do. Well, barred from granting her whatever they want. Well, your honor, that is true, but I will say, and certainly I have no indication that the father would want to do so, and the father has expressed a significant amount of antipathy toward the mother that's expressed in his testimony. The first off, making any change in the family law case would require a court's finding that change would be in the best interest of the child, and normally that requires a substantial change in circumstances, which is to say that the mother would have to prove to the court's satisfaction that she has her issues under control. Now, that is something that I would assume the court would not take lightly. That, nevertheless, does preserve some of the rights of the mother. It also preserves a degree of instability for the child. I think, your honor, under the terms of this order, there really is very little instability. This order provides for no decision-making responsibilities for the mother, and for solely a limited amount of supervised parenting time. I don't think that's really any more instability than any other child who's involved in a family law case. There are many family law cases where you may say that one parent has some issues, and nevertheless, that that's exactly the sort of thing that's permitted in any other family law case. But this isn't any other family law case. I agree, it's not. It started in the juvenile court with serious concerns about your client. And about the father, your honor. The father, to his credit, has done a number of things that the court believes has addressed those concerns. And I think that I don't really see, your honor, in terms of the actual results of the way a termination of the mother's parental rights protects the child in a way that the family law order does not. The family law order says the child is with the father, basically full stop, gets some supervised time with the mother. And if that supervised time was inappropriate, if there was some showing that that's inappropriate, then that could be stopped, too, upon a change in substantial circumstances. What if there's a showing that it's that it could be appropriate? Then I would. That's the part about permanence and stability. Well, the court evidently found that it was appropriate because the court entered an order authorizing that. A family law court. The same judge, the same judge here who did the same judge who, if I remember correctly, is the same judge as the judge in this juvenile case. And the family law court also did that on the basis that it had said, I will not dismiss this juvenile case until you get an order in the family law court. And that's not what he said. He said he would be uncomfortable and uncomfortable. So I don't promise that it would be done. Well, it's certainly your honor. I think it was an indication that it would be done. And I also find it very interesting that the state on the exact same day as that order was obtained, moved to terminate the mother's parental rights. The state had never said, you know, the state, I think that that seems to just be the state saying that's not good enough. And I don't see why that wasn't good enough, because the court certainly contemplated that would likely to terminate or likely dismiss the juvenile case. I'm sorry. And it seemed that the parties proceeded on that basis. Well, excuse me, if I could just follow up on what you said, the parties proceeded on that basis. Are you saying that there was some kind of an agreement that was breached? I believe so, your honor, that I think that the court says I would not. The court says that, in fact, the court at the later hearing said I kept this case open just to allow the father to get an order in the family law case. What was your client's part in the agreement then? I think my client, my client's part in the agreement was that she would no longer have the juvenile, that she would no longer have this case going on, that she would no longer have this juvenile case going on so long as a family, so long as a family law case was opened up. Well, that might be a benefit that she would experience. But what was her performance in this agreement? If you're saying that there was an agreement, what was her side of the agreement? What was she to do? And what did she give up by entering into this agreement? I think what she would have given up and what she would have had to do would have been to submit herself to the jurisdiction of the family court, which the court, family court obtained jurisdiction over her, and to proceed along with the family law court. And it seems as though that she has been made a party in the family law case and that she has the, and that she is required to follow the orders of the family law court. And so, your honors, I, I think that I don't see any, basically, your honors, I don't think that the termination, I know my time is short at this time, but I don't believe that the termination actually furthers the state's, the state's admittedly compelling interest in protecting the child in any way that the family law order does not. The state cannot, the state DCFS could be involved in the family law case. A guardian ad litem could be appointed in the family law case. I don't see why that is not sufficient. And I don't think that there is any reason that the state needed to go this far to terminate my mother's parental rights. I think if the judge in the family law case felt that he had given the indication that the juvenile case would be dismissed or that there not need to be any further proceedings in the juvenile case. You've told us it's the same judge. He had the option of doing any number of things when the state filed that petition to terminate parental rights. But instead he went ahead and heard that and then granted the state the relief that it wanted. I, and you're, you didn't really answer Judge Harris's, Justice Harrison's question, Harris's questions very well. There wasn't any agreement. Your client hoped or thought it was implied that something was going to happen. That's not an agreement. Your Honor, I think that the court was in error not to dismiss the juvenile case. The court said it held this case open just to allow the father to get a family law case, the family law order. That's what the court said it did. I think that, that. What if, what if, what if they did that? What if he did that and the mother went into rehab? Then I would have. Was he still obligated? I believe that the court would have been because I think that the court, if the court at that time in the family law case, if the court found that it's inappropriate for the mother to have any parenting time, any visitation at that time, it would have been well within its rights to enter such an order. You should proceed. Then Your Honors, I, I don't know how much time I have left. I know not very much. Okay, I will just say, Your Honors, I'll keep it short then. I think that there was really, again, I don't believe that this court, the court's action in terminating the mother's parental rights was narrowly tailored, was as narrowly tailored as it could have been, as it should have been to protect the mother's fundamental liberty interest in this case. For that, what is the fundamental liberty interest that still exists after being found? It is still. Doesn't it shift almost completely to the best interest of the child? Well, that's what the court's consideration is, Your Honor. But nevertheless, the, the, the finding of unfitness does not itself terminate the mother's liberty interest. The liberty. True. Well, it doesn't terminate her interest. And I think that nevertheless, the court had the option of proceeding solely in the family law case. If the mother had done something, I think the court should have. Your Honor, I understand the court didn't. It's that our, my argument, my fundamental argument that I'm advancing today is that it should have. I, I, we understand that. Certainly, Your Honor. Otherwise, Your Honor, I also, I have some, well, I, I, I'll, I'll reserve my remaining time for rebuttal, actually. I appreciate Your Honor's time. Thank you. Thank you. Mr. Escalero. May it please the court. Good morning, Your Honors. My name is Rosario Escalero. I represent the state. Uh, so there's two, uh, two topics he, opposing counsel brought up on and, and our argument. And I'd first like to address the first one, the constitutional one. Um, he didn't, uh, the respondent never raised this issue in, at the trial court. So it's the state's contention that they forfeited this issue. Um, uh, other than that, uh, the best interest, it's the state's contention that, you know, with, uh, it's not against the manifest weight of the interest that it was in, uh, the minor's best, uh, interest that respondents' rights be terminated. Tell us why. Tell us why. The reason why is because I think it was, uh, it was permanency as the trial court state, it was permanency and stability. Um, the respondent in this case had multiple issues. Um, first, uh, she didn't, although she did complete in treatment, uh, treatment for drug counseling, she didn't do any out treatment. She never visited the minor, which is very important in the best interest, uh, uh, determination. I, I, it's our, our, at least our contention. She didn't complete any random drug drops. And then, uh, she had never had any contact with a caseworker, which makes sense because she didn't attend any other, other, uh, the proceedings before. And that's why I want, um, one of the, uh, they had asked counts or counsel had asked for continuance and they could never, they didn't have one good response for that or, for, or granting that continuance. So basically, um, having the minor go back and forth between the father who is obviously fit. And then the mother who is not fit would create some instability and permanency with the child. Um, and I think the trial court was clear about that. It clearly stated, those are the main reasons, even though it knew the father had, you know, taking care of the minor's needs and everything was fine on that end, but it was, it was in the minor's best interest. If it were to go to the, to the respondent in this case, it would jeopardize that even I forgot how old the minor was, but, uh, just creating that kind of imbalance there would create some instability and permanency with minor. Uh, and then any, um, I think there's an implication that there's some sort of agreement. I don't think there was any agreement at all. I think the state had a good faith basis to, uh, file this motion to terminate, uh, the, uh, the parent, uh, respondent's parental rights. And, uh, other than that, I don't, I haven't, that's our basic, our, our argument is there the trial court was clearly concerned about permanency and stability with the minor in this case, with the respondent's care and her lack of compliance with her, uh, her, with her progress in the service goals. And because of that, it would create instability. Counsel, do you have any argument on the constitutional issue other than it was forfeited? I think it was narrowly tailored and, um, I, I honestly, I don't get their argument. Uh, according to the brief, uh, I think it was narrowly tailored. It was basically, I mean, I understand that the respondent or the minor is with the child or the father, um, but that alone doesn't not make it narrowly tailored. Um, I, I, uh, that's the best I can say. I, I, I mean, there's no case. I have, I haven't seen any case law. I know I've seen cases where, uh, one, one child has remained with the parent and then, uh, the other respondent or the actual other parent has been terminated. But, uh, other than that, I, I, if it's, I mean, those were unreported, but, um, I, I think, uh, that's the best I can say. I don't know how it's not narrowly tailored. Um, I think the state had a compelling interest in this case, uh, because the respondent had not completed any, uh, any subsequent, or at least outpatient, they didn't complete outpatient treatment. But, um, other than that, that's, that's all the state has. Thank you, sir. Rebuttal. Um, yeah, sure honors, and I will keep it brief. First, I understand the state's argument about forfeiture. First, I don't concede that, that this was forfeited. Uh, the, I understand that the, that the mother's trial counsel didn't use the word constitutional, but he did argue it was unnecessary. I think that's effectively an argument that it was narrowly tailored. And, um, in addition, um, the, this court's case law has long cited, has long said that doctrine of administrative convenience, the court can avoid the issue, can avoid forfeiture if it is necessary to achieve a just result or a body of sound precedent. I don't think forfeiture is appropriate in this case. Um, the second, the state seems to be arguing that, well, the, the, the child could be going back and forth, uh, between the parents. Um, if we did not have a family law order in effect, then the state's argument might have some weight. But there is an order in effect. The child's not going back and forth between the parents. The child is staying with the father. The mother gets occasional supervised parenting time. It's not as though the child is going, oh, you're going to go stay at mom's for, you know, every other weekend on Wednesdays. That's not the way this is working. Um, the mother gets some time to visit the child. And based on the facts of this case, that is not the case. And in fact, I, I know of at least one third district case, your honors in race CL-384 ILAP-3-689 from 2008, where, um, the court found one of the parents unfit, but, uh, dismissed the case on the basis that they're, that the other parent was fit and that these issues should be handled in their divorce case. And I think that something like that should have happened here. As to the, the state's other arguments, um, the mother has testified that she did try to communicate with case workers, that she was having communication issues with the case workers. Um, that's, I, I understand that there might've been some other issues, but that she certainly was trying to communicate. The trial court found she lacked credibility. I understand that. And I understand that that's, I understand the trial court's finding in that case. Um, nevertheless, here, your honor, the mother did have, was having some communication with the child. Um, I think clearly the child wants the mother to be in, um, the, in the child's life. There is no real showing here other than this issue of need for permanence as to how the mother's presence in the child's life, even in some small supervised fashion is actually hurting the child. There, I don't really think there's any substantial showing that allowing the mother to have some presence in the child's life, albeit small in this case, actually injures the child actually is against the child's best interests. And I think that's ultimately what it comes down to really here, your honors, um, the mother, because of, because of the way the family law court's order is, um, set up, even if this court does make the finding that the mother is in some way, the mother's presence is in some way, um, if she was to have full custody of the child would be in some way deleterious. Um, I don't think there is any showing that some limited amount of contact is actually going to cause injury or a problem to the child. And I think that the family law, the family law case sufficiently protects the child's safety and best interests. And I believe that the court should reverse this case or the juvenile case be dismissed and order the parties to proceed in the family law case. And with that, unless the court has questions for me, I rest. I do have one question that occurred to me as you're concluding here. It seems to me you're saying that the family law order was tantamount, it provided essentially the same relief to the state and everybody should have felt secure, uh, uh, just with the family law order, but the father at any point, or excuse me, the mother without the termination order in place, the mother at any point, uh, uh, could have gone back in and petitioned for a change in that family, uh, case. If there was a substantial change in circumstances relating to the father, relating to the father's, uh, housing to his dating relationship to, you know, any criminal, uh, aspects of it, uh, it would seem that there were any number of potential and maybe even likely, uh, uh, circumstances that would have lended instability, uh, to that, uh, uh, situation where the mother, uh, uh, could have gone in and, uh, uh, petition for, uh, additional, uh, rights in the family law case. So are you essentially saying that the, uh, the, the orders were, um, uh, comparable that the family law order was providing, uh, that same measure of stability for the child as the termination order? Um, your honor, I, uh, before I answer the question, I know that some time ago I was flashed with the two minutes remaining sign. So may I have a, uh, brief extension of time to allow me to address your question? You'll get a red light. Very good. Thank you. Thank you, your honors. Um, I know your, your honor is correct. The mother has the right to petition for a change in parenting time. Um, but a petition is not an order modifying the parenting time. Um, it's just a petition. It's just asking the court to do something. The court would actually have to make that change and it would have to find that it would be in the best interest of the child. Um, I do think that the, the court's current order in family law case is somewhat comparable to what was done in the juvenile case and for the court to change that order in the juvenile and the family law case requires showing that it's in the best interest of the child. And if something happens with the father, which is speculative, we don't know. Um, the court could make appropriate orders. There's the court can always enter a guardianship if that's the case. If there's some, if there, if in some hypothetical situation, there were an order situation where the child needed to be placed with somebody else, a guardianship could be granted. Um, if the court finds that neither the mother nor the father is able to make day-to-day decision-making, um, decisions about the child. And I can tell the court I've been involved in a case in Rock Island County where that, where that exact situation happened. Um, this is, I think that the, your, your honor, your question, yes, the mother has the right to petition for it, but the court would have to actually enter an order making that change. And there's a difference between petitioning for it and actually having the court make such an order. And, uh, I think that the court has continuing oversight over the family law case in the long-term. Thank you, counsel. Thank you, your honors. Thank you both gentlemen. We'll take the matter under advisement.